UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLARD HALL,                                          CIVIL ACTION
            Petitioner,

VERSUS                                                NO. 11-CR8-111954

ROBERT C. TANNER, WARDEN,                            DIVISION: "G"
            Respondent.

MEMORANDUM OF LAW AND ARGUMENT IN SUPPORT OF THE
APPLICATION FOR A 28 U.S.C. § 2254 WRIT OF HABEAS CORPUS

MAY IT PLEASE THE HONORABLE COURT:

    NOW INTO COURT comes, WILLARD HALL, hereinafter the
Petitioner, in pro se representation and respectfully requests that this
Honorable Court Grant Writ of Habeas Corpus directed to the Twenty
Second Judicial District Court, Parish of Washington, Franklinton, Louisiana
from the judgment entered on March 13, 2012.

    The Memorandum in Support of the Application for a 28 U.S.C. §
2254 Writ of Habeas Corpus is attached hereto the Application and made
a part of the Application by reference thereto.

                              Respectfully submitted,

                              _Willard Hall_
                              WILLARD HALL, DOC # 595605
                              (Petitioner - Pro Se)
                              RAYBURN CORRECTIONAL CENTER
                              27268 HIGHWAY 21
                              ANGIE, LOUISIANA 70426
                              Counsel of Record

TENDERED FOR FILING

MAY 29 2019

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS _____ i

TABLE OF AUTHORITIES _____ ii-iv

JUDGMENT BELOW _____ 1

JURISDICTION _____ 1

CONSTITUTIONAL PROVISION AND STATUTES INVOLVED _____ 1

STATEMENT OF THE CASE _____ 2

SUMMARY OF THE ARGUMENT _____ 6

REASONS FOR GRANTING THE WRIT _____ 8

GROUND ONE: The Trial Court Exceeded its Jurisdiction _____ 12

GROUND TWO: Denial of Effective Assistance of Counsel _____ 20

CONCLUSION _____ 30

CERTIFICATE OF SERVICE

ORDER

APPENDICIES

# TABLE OF AUTHORITIES

CASES :                                                                              Page

Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276, 87 L.Ed.
    268, 63 S.Ct. 236, 143 ALR 435 —————————————————————— 11

Beck v. Ohio, 379 U.S. 89, 91 (1964) ————————————————————— 13

Betts v. Brady, 316 U.S. 455, 465, 86 L.Ed. 1595, 62 S.Ct. 1252 (1942)——— 7

Brecht v. Abrahamson, 113 S.Ct. 1710-1717 (1993) ————————————— 17

Brinegar v. United States, 338 U.S. 160, 175-76 (1949) ——————————— 13

California v. Trombetta, 467 U.S. 479, 485, 81 L.Ed. 2d 413, 104 S.Ct.
    2528 (1984) ———————————————————————————————— 6

Crane v. Kentucky, 476 U.S. 683, 690, 90 L.Ed. 2d 636, 106 S.Ct. 2142 (1986)——— 6

Duncan v. Louisiana, 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444 (1968)——— 27

Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed. 2d 579 (1979)——— 26

Evitts v. Lucey, 469 U.S. 387, 83 L.Ed. 2d 821, 105 S.Ct. 830 (1985)———— 7

Fisher v. Roe, 263 F. 3d 906, 914 (9th Cir. 2001) ————————————— 5

Gideon v. Wainwright, 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792, 93
    ALR 2d 733 (1963) —————————————————————————————— 7

Hughes v. United States, 258 F. 3d 453, 457 (6th Cir. 2000)———————— 19

Illinois v. Gates, 462 U.S. 213, 231 (1983) ———————————————— 12

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979)——— 22

Johnson v. Zerbst, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019, 146 ALR
    357 (1938) ———————————————————————————————— 7

Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91
    L.Ed. 2d 305 (1986) ————————————————————————————— 21

Ornelas v. United States, 517 U.S. 690, 695 (1996) ———————————— 12

Peters v. Kiff, 407 U.S. 493, 502-504, 33 L.Ed. 2d 83, 92 S.Ct. 2163
    (1972) ————————————————————————————————————— 19

Powell v. Alabama, 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct 55, 84 ALR 527 (1932) ⎯⎯⎯ 7

Smith v. Texas, 311 U.S. 128, 130, 85 L.Ed. 84, 61 S.Ct. 164 (1940) ⎯⎯⎯ 27

State v. Anderson, 07-752, p. 6 (La. App. 5 Cir. 2/6/08), 979 So. 2d 566, 570. ⎯⎯⎯ 23

State v. Bridgewater, 00-1529, pp. 8-9 (La. 1/15/02), 823 So. 2d 877, 889 ⎯⎯⎯ 22

State v. Captville, 448 So. 2d 676, 678 (La. 1984) ⎯⎯⎯ 22

State v. Chism, 436 So. 2d 464, 470 (La. 1983) ⎯⎯⎯ 23

State v. Jacobs, 504 So. 2d 817, 820 (La. 1987) ⎯⎯⎯ 23

State v. Pierre, 93-08-93 at p. 5 (La. 2/3/94), 631 So. 2d 427, 429 ⎯⎯⎯ 22

State v. Preece, 270 So. 2d 850 (La. 1973) ⎯⎯⎯ 19

State v. Shapiro, 431 So. 2d 372, 389 (1982) ⎯⎯⎯ 23

State v. Sims, 02-2208, p. 6 (La. 6/27/03), 851 So. 2d 1039, 1043; State v. Robertson, 97-2960, pp. 2-3 (La. 10/20/98), 721 So. 2d 1268, 1269 ⎯⎯⎯ 16

State v. Sosa, 05-0213, p. 11 (La. 1/19/06), 921 So. 2d 94, 101 ⎯⎯⎯ 24

State v. Wright, 445 So. 2d 1198, 1201 (La. 1984) ⎯⎯⎯ 23

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) ⎯⎯⎯ 4

Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed. 690 (1975) ⎯⎯⎯ 12

Teague v. Lane, 489 U.S. 288, 311-314, 109 S.Ct. 1060, 103 L.Ed. 2d 334 (1989) ⎯⎯⎯ 18

Thiel v. Southern Pacific Co., 328 U.S. 217, 227, 90 L.Ed. 1181, 66 S.Ct. 984, 166 ALR 1412 (1946) ⎯⎯⎯ 28

Thompson v. Altheimer & Gray, 248 F.3d 621 at 625 (2001) ⎯⎯⎯ 19

United States v. Cotez, 449 U.S. 411, 418 (1981) ⎯⎯⎯ 13

United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 2044 n. 11, 80 L.Ed. 2d 657 (1984) ⎯⎯⎯ 7

Van Tran, 212 F.3d at 1153 ⎯⎯⎯ 6

iii

Williams v. Taylor, 529 U.S. 362, 403-04, 146 L.Ed. 389, 120 S.Ct. 1795 (2000) _____ 4

Wong Sun v. United States, 371 U.S. 471, 479 (1963) _____ 13

## CONSTITUTIONAL PROVISIONS AND STATUTES INVOLVED

CONSTITUTION:                                                        Page

      U.S.C.A. CONST. Amend. XIV _____ passim, 1

STATUTES:

28 U.S.C. § 1254 (1) (Jurisdiction) _____ 1
28 U.S.C. § 2254 (a) (Writ of Habeas Corpus and Antiterrorism and
      Effective Death Penalty Act of 1996 (AEDPA)) _____ 1, 4
LA CONST. Art. I, § 2 (Due Process of Law) _____ 1
LA CONST. Art. I, § 5 (Unreasonable Searches and Seizures) _____ 16
LA CONST. Art. I, § 13 (Right to Assistance of Counsel) _____ 8-9
LA CONST. Art. I, § 16 (Right to a Fair Trial) _____ 8-9

La. C. Cr. P. Art. 703 et seq. (Inadmissible Evidence) _____ 17
La. C. Cr. P. Art. 930.2 (Post Conviction Burden of Proof) _____ 4
La. R.S. 14: 27. 30 (Attempted First Degree Murder) _____ 3
La. R.S. 14: 27. 31 (Attempted Manslaughter) _____ 3
La. R.S. 14: 34 (Aggravated Battery) _____ 3
La. R.S. 15: 438 (Circumstantial Evidence) _____ 23

HR Rep. No. 1076, 90th Cong., 2d Sess., at 8 (1968) (Biased Jury) ____ 17

## JUDGMENT BELOW

The per curiam opinion of the Louisiana Supreme Court is officially reported at Writ No. 2018-KH-0796 and Appendix A to the petition. The judgment of the Twenty Second Judicial District Court is officially reported at Case Docket No. 11-CR8-111954 and Appendix B to the petition.

## JURISDICTION

The jurisdiction of this Court is invoked pursuant to the provision of 28 U.S.C. § 1254 (1), and further by 28 U.S.C. § 2254 (a).

## CONSTITUTIONAL PROVISION AND STATUTES INVOLVED

Fourteenth Amendment to the United States Constitution

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## LOUISIANA CONSTITUTION ARTICLE I, SECTION 2 (1974)

Section 2. Due Process of Law

No person shall be deprived of life, liberty, or property except by due process of law.

1

## STATEMENT OF THE CASE

### A. Facts

On November 12, 2010, at approximately 12:30 a.m, Willard Hall, a 60-year old White male and Homeowner, resided at 11231 Highway 21 South in Bogalusa, Louisiana. As a result of someone pounding on the door of Hall's residence, he was awakened from his sleep. Hall got out of his bed and retrieved his handgun as a precautionary measure, and then he proceeded walking to his front door with caution. Hall observed two White male subjects who were standing near his front doorway to his home and advised them to get off of his property. One of the unknown individuals stated that he was a policeman; and Hall then proceeded to open his door with caution and his handgun pointed to the ground. As Hall opened the front door of his home, Hall immediately noticed that one of the individuals had a gun pointed directly at him. While terrified and frightened and fearing for his life, Hall asked the two stangers, "What do you want?" When one of the men told Hall to "come outside," again, Hall told the two men, "Get off my property," and "I did not call for police assistance." As Hall proceeded to close his door, one of the individuals shot Hall with a Taser. As a result of being shot with the Taser, Hall fell to the floor while squeezing the trigger of his handgun and two gunshots accidently rang out from his handgun. The record evidence reveals that both shots were fired in the opposite direction from where the two individual men were standing on Hall's property. When the shock from the Taser subsided, Hall regained his composure and managed to return to his bedroom. He picked up his telephone and dialed 911, requesting police assistance. Hall told the 911 dispatch operator that, he needed police assistance at his residence because, there were two strange white male subjects in front of his home, who have gone crazy by shooting him with a Taser for no reason whatsoever, and

firing two gun-shots at him as well. The 911 dispatch operator then dispatched a police unit from the Bogalusa Police Department out to Hall's location to assist him, which arrived shortly thereafter. When the Bogalusa Policemen arrived outside of Hall's residence, he walked outside of his home to meet with them; however, Hall was swiftly placed into handcuffs and transported to the police station. The police violated the Fourth Amendment to the United States Constitution when, without probable cause, they searched and seized Hall without question, interrogation, or custodial detention, to either confirm or dispell whether Hall had committed, is committing, or was about to commit a crime. Hall did not consent to the search, and there were no warrants for his arrest. (Tr., pp. 241, 7-16)(App. B ). Hall had no prior arrest nor conviction. Willard Hall is an innocent man.

## B. Procedural History

On November 12, 2010, the State of Louisiana filed a Bill of Information charging Willard Hall with the violations of the La. R.S. 14:27.30 Attempted First Degree Murder; La. R.S. 14:27.30 Attempted First Degree Murder of a Police Officer; and La. R.S. 14:27.30 Attempted First Degree Murder of a Police Officer. He pled Not Guilty. (App. B ).

The Louisiana Trial Court exceeded its jurisdiction when it failed to conduct legal pre-trial procedural due process requirement of a Preliminary Hearing on Suppression of the Evidence. Hence, the trial court failed to establish whether the police had probable cause for arresting the accused, Willard Hall.

On March 12, 2012, following a jury trial, he was found guilty of **Manslaughter** and **Aggravated Battery** by a unanimous verdict. He was sentenced to **15-years** on **Manslaughter** and **8-years** on **Aggravated Battery**, both sentences to run Concurrent with each other. His conviction and

3

sentence were affirmed on appeal, and the Louisiana Supreme Court denied writs. State of Louisiana v. Willard Hall, 2012-KA-1812 La. Unpub. LEXIS 398 (La. App. 1 Cir. 6/11/2013); State ex rel. Willard Hall v. State, No. 131 So. 3d 855 (La. 2/7/2014).

On July 8, 2014, petitioner Willard Hall filed a timely application for post-conviction relief. After considering the application and the applicable law, the Court found that, "Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As to his remaining claims, applicant fails to satisfy his post-conviction burden of proof. La. C. Cr. P. art. 930.2," See the Louisiana Supreme Court Per Curiam No. 2018-KH-0796, Writ Denied.

Willard Hall's conviction was obtained in violation of the Constitution of the United States and the State of Louisiana; the Louisiana Trial Court exceeded its jurisdiction; and because Hall received constitutionally ineffective assistance of counsel during critical stages of his trial and on appeal.

From the judgment of the Louisiana Supreme Court, Willard Hall, the petitioner, now seeks federal habeas corpus relief.

C. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, defines the Supreme Court's standard of review in this case. AEDPA limits the Court's review to the state court's decision, which is ordinarily entitled to deference, 28 U.S.C. § 2254 (d). Limiting federal review to the state court's decision altered the standard of review for habeas petitions. Federal courts previously treated the petition as a wholly new complaint and looked to the state court's decision as relevant but noncontrolling authority. See Williams v. Taylor, 529 U.S. 362, 403-04, 146 L. Ed. 389, 120 S. Ct. 1795 (2000)

(discussing AEDPA's changes to federal court review of state court decisions).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claims--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]
>
> 28 U.S.C. § 2254 (d)(1) (emphasis added).

## D. Unreasonable Application of Clearly Established Federal Law

The Supreme Court's standard of review does not change the rule of decision. "While we are not required to defer to a state court's decision when that court give us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." Fisher v. Roe, 263 F. 3d 906, 914 (9th Cir. 2001).

The federal issue here in Willard Hall's case is the degree to which a trial court's lack of a Pre-Trial Preliminary Hearing and Evidentiary Rulings can abridge the criminal defendant's right to Assistance of Counsel, which ran afoul of Sixth and Fourteenth Amendment protections, see U.S.C.A. Const. amends. 6; 14 s 1.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Assistance of Counsel or Compulsory Process or Confrontation clauses of the Sixth Amendment,

the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. Crane v. Kentucky, 476 U.S. 683, 690, 90 L.Ed. 2d 636, 106 S.Ct. 2142 (1986) (citations omitted) (quoting California v. Trombetta, 467 U.S. 479, 485, 81 L.Ed. 2d 413, 104 S.Ct. 2528 (1984)).

Under Supreme Court standard of review, it is not enough that the state court applied federal law as announced by the Supreme Court, incorrectly -- its application of federal law also must be unreasonable. 28 U.S.C. § 2254 (d)(1); Williams, 529 U.S. at 411. In making that determination the Court must review the application of federal law to determine if, on the whole, the result was objectively unreasonable. Id. at 409-10. The U.S. District Court's review of the whole record should leave the Court with the "definite and firm conviction" that an error has occurred. Van Tran, 212 F. 3d at 1153 (citation and internal quotation marks omitted).

## SUMMARY OF THE ARGUMENT

The Louisiana Supreme Court's per curiam opinion was an unreasonable application of the United States Supreme Court's precedents. A state court decision is "contrary to" federal law established by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, ----, 120 S.Ct. 1495, 1523, 146 L.Ed. 2d 389 (2000). The state court's rejection of the defendant's Sixth and Fourteenth Amendment argument failed to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. The Supreme Court of the United States has held that "[t]he deprivation of the right to the assistance of counsel in a criminal trial proceeding ... shall warrant reversal." Strickland v.

6

_Washington_, 466 U.S. 686-697- 698, 104 S.Ct. 2052 (1984); accord _United States v. Cronic_, 466 U.S. 648, 104 S.Ct. 2039, 2044 n. 11, 80 L.Ed. 2d 657 (1984); _Evitts v. Lucey_, 469 U.S. 387, 83 L.Ed. 2d 821, 105 S.Ct. 830 (1985); _Gideon v. Wainwright_, 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792, 93 ALR 2d 733 (1963) held that the Sixth Amendment right to counsel was "so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the states by the Fourteenth Amendment." _Id._ at 340, 9 L.Ed. 2d 799, 83 S.Ct. 792, 23 Ohio Ops 2d 258, 93 ALR 2d 733 (1963); quoting _Betts v. Brady_, 316 U.S. 455, 465, 86 L.Ed. 1595, 62 S.Ct. 1252 (1942); _Johnson v. Zerbst_, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019, 146 ALR 357 (1938); _Powell v. Alabama_, 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55, 84 ALR 527 (1932).

The Twenty Second Judicial District Court, moreover, was incorrect for an even more fundamental reason. Before the trial court conducts a legal pre-trial Preliminary Hearing on Probable Cause for the defendant's arrest, and an Evidentiary Hearing on Suppression of the Evidence, the trial court has no jurisdiction to present the case for a trial by jury. The trial court in this case failed to establish probable cause for Willard Hall's arrest and deprived him of the due process right to a pre-trial Preliminary Evidentiary Hearing. Thus, the First Circuit Court of Appeals had no jurisdiction to resolve the merits of appellant-Hall's constitutional claims. Moreover, the "trial" and "appellate" court adjudications are based upon incomplete state court record.

The Louisiana Supreme Court did not give full consideration to the trial court's procedural errors patent on the face of the court record whereby the lower court failed to conduct pre-trial preliminary evidentiary hearing on probable cause and suppression of the evidence; and, the Court did not consider the substantial evidence Hall put forth in support of his prima facie case as proof that he, as a criminal defendant, was deprived of a meaningful opportunity to present a complete defense, in violation of the Sixth and Fourteenth Amendments

to the United States Constitution. Instead, the Louisiana Supreme Court accepted without question the lower state court's erroneous evaluation of Hall's Sixth and Fourteenth Amendment federal claims and erroneously denied Supervisory Writs to the Twenty Second Judicial District Court, in violation of the constitutional due process right to a fair and impartial trial. The Louisiana Supreme Court's decision was objectively unreasonable and must now be reversed. U.S.C.A. CONST. Amends. 6; 14; LA CONST. Art. I, §§§ 2, 13, 16; 28 U.S.C.A. § 2254 (a).

## REASONS FOR GRANTING THE WRIT

The Louisiana Supreme Court's decision is in conflict with the decision of the Supreme Court of the United States on the same important matter; it has decided an important federal question in a way that conflicts with the decisions by other state courts of last resort and other federal sister circuits; and has so far departed from the accepted and usual course of judicial proceedings and sanctioned such a departure by the lower state courts as to call for an exercise of the United States District Court, Eastern District of Louisiana's supervisory power. Willard Hall's state court criminal conviction was obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Louisiana Constitution Article I, §§§ 2, 13, 16; he was deprived of his life, liberty, and property, without due process of the law.

The Louisiana Supreme Court has rendered the decision that "Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). As to his remaining claims, applicant fails to satisfy his post-conviction burden of proof. La. C.Cr. P. art. 930.2," which has resulted in a decision that is contrary to, and involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254 (d)(1) (emphasis added).

The Supreme Court of the United States has repeatedly recognized the importance of the public at large in resolving questions of public confidence in the Courts. This case presents a fundamental question of the interpretation of the Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 686-697-698, 104 S.Ct. 2052 (1984). The question presented is of great public importance, because it affects the operations of the court systems in the State of Louisiana. In view of the large amount of litigation over criminal court proceedings, guidance on the question is also of great importance; because it affects their ability to receive fair decisions in criminal proceedings that may result in months or years of added litigation or harsh punitive confinement, such as this instant case involving Willard Hall.

The Louisiana Constitution Article I, § 13 Rights of the accused, provides in pertinent part:

> When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.

The Louisiana Constitution Article I, § 16 Right to a fair trial, provides in pertinent part:

> Every person charged with a crime is presumed

9

innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. Accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.

A person who happens to be a lawyer and is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is crucial to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. The Gideon v. Wainwright court has recognized that the Sixth Amendment right to counsel exists and is needed in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses but it defines the basic elements of a trial largely through the several provisions of Sixth Amendment including the Counsel Clause:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process

for obtaining witnesses in his favor and to have Assistance of Counsel."

Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of the issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment since access to counsel's skill and knowledge is necessary to accord defendants "ample opportunity to meet the case of the prosecution" to which they are entitled. Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276, 87 L.Ed. 268, 63 S.Ct. 236, 143 ALR 435 (1942); Powell v. Alabama, Supra, at 68-69, 77 L.Ed. 158, 53 S.Ct. 55, 84 ALR 527.

In certain Sixth Amendment contexts, as clearly recognized here in this instant case, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are the various kinds of state interference with attorney Roy K. Burn's assistance. United States v. Cronic, ante, at 659, and n. 25, 80 L.Ed. 2d 657, 104 S.Ct. 2039.

The criminal trial in this case was unfair, because the Louisiana trial court failed to conduct a pre-trial Preliminary Hearing on Probable Cause for Hall's arrest and no evidence subject to adversarial testing was presented to the trial court for resolution of the issues defined in advance of the trial proceeding; thus, such state interference with counsel's assistance constitute actual and constructive denial of the assistance of Counsel altogether, and legally presumed to result in prejudice. For these reasons, the United States Magistrate Judge, in and for the United States District Court, Eastern District of Louisiana should grant writ of habeas corpus. 28 U.S.C. § 2254(a).

## GROUND ONE

1. Willard Hall was deprived of his Sixth and Fourteenth Amendments to the United States Constitution and Louisiana Constitution Article I, §§ 13 and 16 Right to the Assistance of Counsel and Fair Trial, when the Louisiana Trial Court Exceeded its Jurisdiction by failure to conduct a procedural Pre-Trial Preliminary Evidentiary Hearing on Probable Cause and Suppression of Evidence, no evidence subject to adversarial testing was presented to the trial court for resolution of the issues defined in advance of the trial proceeding; and 11-Women Jury was not a representative of a fair cross-section of the community and court systematically excluded men from the jury selection to obtain a favorable verdict of guilty in violation of Due Process. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed. 690 (1975).

Petitioner strenuously argues that the Louisiana trial court exceeded its jurisdiction by its failure to conduct a procedural pre-trial Preliminary Evidentiary Hearing on Probable Cause for Willard Hall's arrest and on Suppression of the Evidence, and no Evidence subject to adversarial testing was presented to the trial court for resolution of the issues defined in advance of the trial proceeding. Thus, the Louisiana Twenty Second Judicial District Trial Court was without jurisdiction to conduct a legal trial proceeding in State of Louisiana v. Willard Hall, No. 11-CR8-111954, Division "G".

Probable cause is required to justify most governmental intrusions upon interests protected by the Fourth Amendment. Ornelas v. United States, 517 U.S. 690, 695 (1996). Probable cause is a "practical nontechnical conception," based on "common sense conclusions about human behavior." Illinois v. Gates, 462 U.S. 213, 231 (1983). Whether evidence rises to the

level of probable cause "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. (quoting United States v. Cotez, 449 U.S. 411, 418 (1981)).

The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place," Gates, Id. at 238.

Probable cause to obtain an arrest warrant or to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in itself to warrant a belief by a prudent person that an offense has been or is being committed by the suspect. Beck v. Ohio, 379 U.S. 89, 91 (1964); Wong Sun v. United States, 371 U.S. 471, 479 (1963)("It is basic than an arrest... must stand upon firmer ground than mere suspicion."); see also Brinegar v. United States, 338 U.S. 160, 175-76 (1949).

On direct-examination by the assistant district attorney, Lewis V. Murray III, the arresting officer, Sergeant-Randy Revere, testified during the trial proceeding as follows:

(Tr., pp. 179, 20-33, 29-32; pp. 180, 1-2)(App. B):

BY MR. MURRAY:

Q.     Did you first get a call from a Deborah Hall, do you remember that?

A.     Yes, Sir.

Q.     Was it a 911 call or was it just a call?

A.     From Mrs. Hall, it was just a regular landline call.

Q.     Okay. There was no--she didn't-- no 911 type of emergency?

A.     No, Sir.

On cross-examination by the criminal defense attorney, Roy K. Burns, Jr., the arresting officer, Sergeant-Randy Revere, testified during the trial proceeding as follows:

(Tr., pp. 184, 27-32; pp. 185, 1) (App. B):

BY MR. BURNS:

Q.   Now, I want to start off here from the standpoint of actually how this thing started, which is pretty much very accurate, there. The first thing is, is that Mrs. Hall called the police department in a nonemergency situation at 12 o'clock at night, approximately, is that correct?

A.   That's correct.

(Tr., pp. 186, 13-16; pp. 188, 18-21) (App. B):

Q.   And you don't know why the police had already shot him for nothing with the Taser, is that correct? You don't know why they did that?

A.   No, Sir, I don't.

Q.   There was not a --- in terms of domestic abuse violence that was going on out there, Mrs. Hall did not suggest a thing, did she?

A.   No.

(Tr., pp. 190, 19-26) (App. B):

Q.   Now, you in your capacity, did you see any active arrest warrants for Mr. Hall that you had directed policemen to?

A.   I don't recall if I even looked, Sir.

Q.   So in terms of a crime being committed, you did not dispatch anyone, any place, due to a crime being committed, is that correct?

14

A.   That's correct.

On direct-examination by the assistant district attorney, Lewis V. Murray III, the arresting officer, Sergeant-Roy Lee, testified during the trial proceeding as follows:

(Tr., pp. 261, 11-17) (App. B):

BY MR. MURRAY:

Q.   Did you and he talk with Mrs. Hall?

A.   Yes, Sir, we did.

Q.   After talking with her, what did you all do?

A.   We went to the door, we advised her that we would speak to him for her, that if he refused, there was nothing we could do at that time of night, she'd have to consult an attorney.

(Tr., pp. 276, 16-18) (App. B):

Q.   All right. He didn't appear drunk — did he appear drunk?

A.   No, Sir.

On cross-examination by the criminal defense attorney, Roy K. Burns, Jr., the arresting officer, Sergeant-Timothy Evans, testified during the trial proceeding as follows:

(Tr., pp. 241, 4-16) (App. B):

BY MR. BURNS:

Q.   When you went to his house, you were not going to force him to do anything?

A.   Correct.

15

Q. And he – you came to his house – you had no search warrant. Did you have a search warrant?

A. No.

Q. Did you have a arrest warrant?

A. No.

Q. Did you have a protective order to enforce?

A. Not at that time, no.

Q. Did you have any civil injunctive order to enforce that would make you force her into the house?

A. No.

Under these circumstances, the police did not have probable cause to arrest Willard Hall because probable cause was clearly lacking. The Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution protect against unreasonable searches and seizures. State v. Sims, 02-2208, p. 6 (La. 6/27/03), 851 So. 2d 1039, 1043; State v. Robertson, 97-2960, pp. 2-3 (La. 10/20/98), 721 So. 2d 1268, 1269. The police in Hall's case violated the Fourth Amendment when, without probable cause, they searched and seized him and swiftly transported him to the police station.

The Supreme Court of the United States has continually emphasized the probable cause requirement with respect to warrantless arrests and searches. Under the Fourth Amendment, it is imperative that a search and seizure without a warrant be made upon existing probable cause or it is unreasonable and unlawfully made. Brinegar v. United States, 338 U.S. 160, 164 (1949).

The 22ND JDC exceeded its jurisdiction by failure to conduct pre-trial Preliminary Hearing on Probable Cause for Hall's arrest for resolution of this issue defined in advance of the trial proceeding.

The United States District Court's decision also hinges on determining the correctness of the trial court's voluntary abandonment of conducting a legal pre-trial Preliminary Hearing on Suppression of the Evidence, which unconstitutionally deprived the defendant of the due process right to be present in court during such hearing, and to the assistance of counsel representation for the defendant's defense. Thus, the criminal defendant, Willard Hall, was deprived of the right to prepare a defense and to a fair and impartial trial, as a result of the external use of governmental interference involving an abuse of trial court's discretion that violated the Sixth and Fourteenth Amendments to the United States Constitution.

Had a pre-trial Preliminary Evidentiary Hearing been held in this extraordinary case, the evidence prepared and compiled through "Discovery" would have established or disproved facts, which may have included testimony from both state and defense witnesses including the testimony of Willard Hall himself, documents, and other tangible objects that should have been presented before the trial court in this given dispute. Instead, the trial court in this particular case clearly chose to waive or abandon the body of law regulating the burden of proof, admissibility, relevance, and the weight and sufficiency of what shall or shall not be admitted into the record of a legal trial proceeding, see La. C. Cr. P. art. 703 et seq. The 22ND Judicial District Court's unconstitutional waiver or abandonment of the criminal defendant's right to a pre-trial Preliminary Evidentiary Hearing on Suppression of the Evidence, including his right of Presence during that "critical stage," combined with the trial court's deprivation of the right to the assistance of counsel for the defendant's defense, constitutes a **structural constitutional error** that infected the entire trial process. <u>Brecht v. Abrahamson</u>, 113 S.Ct. 1710-1717 (1993); <u>Johnson v. Zerbst</u>, 309 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Willard Hall did not waive his right to due process and the assistance of counsel representation. He was

17

deprived of his right to present a complete defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§§§ 2, 13, 15, and 16 of the Louisiana Constitution. Crane v. Kentucky, 476 U.S. 683, 690, 90 L.Ed. 2d 636, 106 S.Ct. 2142 (1986)(citations omitted)(quoting California v. Trombetta, 467 U.S. 479, 485, 81 L.Ed. 2d 413, 104 S.Ct. 2528 (1984)). The trial court's structural error was prejudicial to Hall's defense and deprived him of the constitutional right to a fair and impartial trial. The trial court's structural constitutional error requires an automatic reversal, because it infected the entire trial process. Constitutional errors that undermine confidence justify the issuance of the federal writ. Teague v. Lane, 489 U.S. 288, 311-314, 109 S.Ct. 1060, 103 L.Ed. 2d 334 (1989).

Additionally, the criminal defendant, Willard Hall, was also deprived of the constitutional right to a fair and impartial trial because the trial court erroneously impanelled a total of eleven (11) women who were sworn in to serve as jurors : 1) Amanda Coleman, 2) Karen Mitchell, 3) Laura Schilling, 4) Jan Buras, 5) Savannah Thompson, 6) Nancy Robinson, 7) Tricia Thomas, 8) Debra Davis, 9) Buffie Passaro, 10) Penny Mack, & 11) Melissa McWhirter. The jury impanelled by the trial court in this case was not a cross-section as it systematically excluded men. A criminal defendant has a Sixth Amendment right to a fair cross-section on his jury. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed. 690 (1975).

The jury wheels, pools of panels, and venires from which the jury was drawn by the 22ND Judicial District Court, systematically excluded men, a distinct group in the community and thereby failed to be reasonably representative thereof. HR Rep. No. 1076, 90th Cong., 2d Sess., at 8 (1968):

It must be remembered that the jury is designed not only to understand the case, but also to reflect the community's sense of justice in deciding it. As long as there are

18

significant departures from the cross sectional goal, biased juries are the result-biased in the sense that they reflect a slanted view of community they are supposed to represent.

Compare in <u>Peters v. Kiff</u>, 407 U.S. 493, 502-504, 33 L.Ed. 2d 83, 92 S. Ct. 2163 (1972) (Opinion of Marshall, J., joined by Douglas and Stewart, JJ.):

These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well. <u>State v. Preece</u>, 270 So. 2d 850 (La. 1973).

Moreover, the trial court failed to conduct the most rudimentary inquiry into their statements, that they could not be fair, and such failure violated Hall's right to an impartial jury. Regardless of the generalized questioning of the entire panel, the venire persons' declaration was not followed by any attempt at clarification or rehabilitation and there was thus no ambiguity concerning their bias. Prejudice to Hall is therefore presumed and Hall is entitled to a new trial. <u>Hughes v. United States</u>, 258 F. 3d 453, 457 (6th Cir. 2001).

The U.S. District Court can find that the jurors "manifested a degree of bias such that the [trial] judge abused his discretion in failing to strike them for cause[.]" <u>Thompson v. Altheimer & Gray</u>, 248 F. 3d 621 at 625 (2001). "Due Process and Equal Protection Clauses were violated[.]"

19

## GROUND TWO

2.   Willard Hall was deprived of his Sixth and Fourteenth Amendments to the United States Constitution and Louisiana Constitution Article I, §§§ 2, 13 and 16 Right to the Assistance of Counsel and a Fair and Impartial Trial, when trial counsel failed to conduct a procedural Pre-Trial Preliminary Evidentiary Hearing on Probable Cause and Suppression of Evidence, no evidence subject to adversarial testing was presented to the trial court for resolution of the issues defined in advance of the trial proceeding, and 11-Women Jury was not a representative of a fair cross-section of the community and counsel systematically excluded men from the jury selection process was not a strategic and tactical choice and violates the Due Process and Equal Protection Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

Petitioner strenuously argues that he hired the criminal defense attorney, Roy K. Burns, Jr., of 335 North New Hampshire Street, Covington, Louisiana 70433, Telephone Number: (985) 892-2945, to represent him in this criminal matter; but counsel for the defendant deprived him of his constitutional right to the effective assistance of counsel because of his failure to conduct a procedural pre-trial Preliminary Evidentiary Hearing on Probable Cause for his client's arrest and on Suppression of the Evidence, and no Evidence subject to adversarial testing was presented to the trial court for resolution of the issues defined in advance of the trial proceeding, which was not a strategic and tactical choice and constitute ineffective assistance of counsel.

The right to counsel, guaranteed by the Sixth Amendment to the United States Constitution and Article 13 of the Louisiana Constitution "is a fundamental right of criminal defendants, it assures the fairness, and thus the legitimacy of our adversarial process." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed. 2d 305 (1986). Without counsel, the right to a fair trial would be meaningless, for it is only through counsel that the accused may secure his other rights. United States v. Cronic, 466 U.S. 648, 655-57, 104 S.Ct. 2039, 2044-46, 80 L.Ed. 2d 657 (1984).

The mere presence of counsel does not satisfy the constitutional guarantee of counsel. As the Supreme Court has often stated, an accused is entitled to representation by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

According to Strickland, a defendant must show that counsel's performance was deficient, not within the range of competence required of attorneys in criminal cases. The defendant must next show that this deficient performance prejudiced his defense by depriving him of a fair trial, i.e., a trial whose results are reliable. Petitioner must demonstrate that as a result of counsel's unprofessional errors the outcome would have been different. Id. 466 U.S. at 694, 104 S.Ct. at 2068.

Denial of Postconviction Relief was improper based on the fact that the petitioner, Willard Hall, showed he received ineffective assistance of counsel, when the petitioner showed what additional **Mens Rea** information his trial counsel would have gleaned from a Preliminary Examination that was not otherwise disclosed through

discovery, and the petitioner overcame the strong presumption that counsel's actions were strategic and tactical choices. Petitioner showed that the "Mens Rea" is the state of mind that the prosecution, to secure a conviction for La. R.S. 14:27.30 Attempted first degree murder of a police officer (Count-1), and La. R.S. 14:27.30 Attempted first degree murder of a police officer (Count-2), must prove that a defendant had when committing the crime, i.e., criminal intent or recklessness. Therefore, this Court should hold that evidence was insufficient to establish defendant possessed requisite **Mens Rea** so as to support the conviction in this case.

Petitioner further asserts that the evidence presented against him therefore failed to establish that he was guilty beyond a reasonable doubt.

In <u>State v. Bridgewater</u>, 00-1529, pp. 8-9 (La. 1/15/02), 823 So. 2d 877, 889, the Louisiana Supreme Court discussed the standard of review for claims challenging the sufficiency of the evidence as follows:

In reviewing the sufficiency of the evidence to support a conviction, we follow the due process standard of review enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). Under that standard, "The appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." <u>State v. Captville</u>, 448 So. 2d 676, 678 (La. 1984). That standard "preserves that role of the jury as the factfinder in the case but it does not allow jurors 'to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" <u>State v. Pierre</u>, 93-08-93 at p. 5 (La. 2/3/94), 631 So. 2d 427, 429. "The jury is not allowed to engage

22

in speculation...." 93-0893 at pp. 5-6, 631 So. 2d at 429. In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt.

Under Jackson, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. See State v. Jacobs, 504 So. 2d 817, 820 (La. 1987). When circumstantial evidence forms the basis of the conviction, the totality of such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15: 438.

However, "[h]ypothesis of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence." State v. Shapiro, 431 So. 2d 372, 389 (1982) (on rehearing) (Lemmon, J., concurring). This circumstantial evidence rule is not a separate test from the Jackson standard; rather, La. R.S. 15: 438 merely "provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt." State v. Wright, 445 So. 2d 1198, 1201 (La. 1984).

"Although the circumstantial evidence rule may not establish a stricter standard of review that the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So. 2d 464, 470 (La. 1983).

"The State may produce direct or circumstantial evidence of [specific intent] in attempted first degree murder cases." State v.

_Anderson_, 07-752, p. 6 (La. App. 5 Cir. 2/6/08), 979 So. 2d 566, 570. The trial judge made "credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing may impinge on the factfinder's discretion only to the extent necessary to guarantee the fundamental due process of law." _State v. Sosa_, 05-0213, p. 11 (La. 11/19/06), 921 So. 2d 94, 101. Specific intent is a question of fact that can be "inferred from the circumstances of the state of mind" by the factfinder.

As to specific intent, Petitioner's chief contention is that the 'State failed to establish' that he had the 'specific intent' to attempt first degree murder on the alleged victims that the state's prosecution must prove to secure a conviction in this case. The U.S. District Court can conclude that the record of the trial court is totally devoid of any evidence whatsoever that established that the Petitioner had specific intent to attempt first degree murder on a police officer from the outset. The U.S. District cannot find that the State's circumstantial evidence excluded every reasonable hypothesis of innocence. A rational trier of fact, viewing the evidence in the light most favorable to the prosecution could not find that specific intent was proven beyond a reasonable doubt. _Jackson v. Virginia_, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

The jury that convicted Willard Hall knew of the circumstantial evidence implicating him, but had no reason to doubt the inferences the State drew from the facts. At retrial, the jury will be confronted with substantial evidence supporting an alternative theory of the alleged crime, given the probability that a jury would have reasonable doubt about his guilt if he were tried with the effective assistance of counsel. _United States v. Cronic_, ante, at 659, and n. 25, 80 L. Ed. 2d 657, 104 S. Ct. 2039.

In addition, counsel Burns decided to put Eleven (11) Women on the jury, which was not a representative of a fair cross-section of the community, counsel systematically excluded men from the jury selection process, and that was not a strategic and tactical choice in which counsel Burns has made in this case. A defendant has a Sixth Amendment right to a fair cross-section of his jury. Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 690 (1975).

The criminal defense attorney, Roy K. Burns, Jr., deprived his client, Willard Hall, of his constitutional right to a representative cross-section of the community on his jury as he systematically excluded men, in violation of the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. The Supreme Court held in Taylor v. Louisiana, that said exclusion violates a defendant's Sixth Amendment right to a representative cross section of the community and that said cross section is a fundamental right of a defendant.

In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury selection process.

With respect to the first prong, Hall, without doubt, established that men "are sufficiently numerous and distinct from women" so that "if they are systematically eliminated from jury panels, the Sixth Amendment's fair cross-section requirement cannot be satisfied."

25

The second prong is established by Hall's statistical presentation. Initially, Hall must demonstrate the percentage of the community made up of the group alleged to be under-represented, for this is the conceptual benchmark for the Sixth Amendment fair cross-section requirement. Hall stated that 48% of the population eligible for jury service was male in Washington Parish at the time of his trial in the year 2012.

To establish the third prong, it is necessary for Hall to show that the under representation of men, generally and on his venire, was due to their systematic exclusion in the jury selection process, Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Hall provided a list of male jurors that were systematically excluded in the jury selections that include but is not limited to the following men: Mr. Miller (Tr, pp. 104, 1-6); Mr. Jones (Tr, pp. 104, 24-27); Mr. Tate (Tr, pp. 107, 7-10); Mr. Adams (Tr, pp. 105, 18-21); & Mr. Weick (Tr, pp. 107, 7-10) (App. B ). A total of eleven (11) women were sworn in to serve as jurors :  1) Amanda Coleman, 2) Karen Mitchell, 3) Laura Schilling, 4) Jan Buras, 5) Savannah Thompson, 6) Nancy Robinson, 7) Tricia Thomas, 8) Debra Davis, 9) Buffie Passaro, 10) Penny Mack, & 11) Melissa McWhirter (Tr, pp. 113, 1-10) (App. B )

A state court criminal defendant's right to an impartial jury trial under the 6th and 14th Amendments is violated by the operation of a state's constitutional and statutory provisions which exclude men from jury service unless they previously file a written declaration of their desire to be subject to service, requiring reversal of the defendant's conviction, where the jury selection system, although not disqualifying men from jury service, results in only a very few men, grossly disproportionate to the number of eligible men in the community being called for jury service.

When, as here, Willard Hall appealed from the trial court's adverse judgment to the First Circuit Court of Appeals, who should note probable jurisdiction to consider whether the Louisiana jury selection system deprived Hall of his Sixth and Fourteenth Amendment right to an impartial jury trial, the First Circuit Court of Appeals should have held that it did; and that these Amendments were violated in this case by the operation of LA CONST. Art. VII, 41 and La. C. Cr. P. art. 402. In consequence, Willard Hall's conviction must be reversed.

The background against which this case must be decided includes the Supreme Court's holding in <u>Duncan v. Louisiana</u>, 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444 (1968), that the Sixth Amendment's provision for jury trial is made binding on the States by virtue of the Fourteenth Amendment. The issue the U.S. District Court has, therefore, is whether a jury selection system which operates to exclude from jury service an identifiable class of citizens constituting 48% of eligible jurors in the community comports with the Sixth and Fourteenth Amendments.

The Court's prior cases are instructive. Both in the course of exercising supervisory powers over trials in federal courts and in the constitutional context, the Court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community. An unanimous Court stated in <u>Smith v. Texas</u>, 311 U.S. 128, 130, 85 L. Ed. 84, 61 S.Ct. 164 (1940), that, "[I]t is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community."

The Supreme Court accepts the fair cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment

and is convinced that the requirement has solid foundation. The The purpose of a jury is to guard against the exercise of arbitrary power to make available the common sense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over conditioned or biased response of a judge. _Duncan v. Louisiana_, _Id_. at 155-56.

This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.

"Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in a specific case ... [T]he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." _Thiel v. Southern Pacific Co._, 328 U.S. 217, 227, 90 L. Ed. 1181, 66 S.Ct. 984, 166 ALR 1412 (1946) (Frankfurter, J., dissenting).

Willard Hall has shown that the jury selection process authorized and conducted by his trial counsel of which he complains, permits an inference of actual prejudice; and that a broad discretion and ministerial duty resided in the court to see that the jury as finally selected is subject to no solid basis of objection

on the score of impartiality. Accordingly, the presiding trial judge, William J. Crain, had the authority and responsibility to conduct a fair and impartial jury selection process. Instead, the trial judge impanelled a biased jury and prejudiced the defendant's criminal trial proceeding, in violation of the Due Process and Equal Protection Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§§ 2, 13, and 16 of the Louisiana Constitution.

As previously mentioned, in certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are the various kinds of external state interference with counsel Roy K. Burn's assistance. United States v. Cronic, ante, at 659, and n. 25, 80 L.Ed. 2d 657, 104 S.Ct. 2039.

Under Strickland, the Petitioner claiming ineffective assistance of counsel has shown (1) counsel's performance was deficient, falling below an effective standard of reasonableness and (2) the deficient performance prejudiced the petitioner. The petitioner has shown there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Both prongs of the analysis has been shown. Petitioner has now successfully overcome the strong presumption that counsel Roy K. Burn's actions were strategic and tactical choices. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), Id. 466 U.S. at 694, 104 S.Ct. at 2068.

The Louisiana state court's resolution of this case constitute an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, the lower state court's decision must now be reversed.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully prays and earnestly request that this Honorable United States District Court for the Eastern District of Louisiana grant writ of habeas corpus directed to the Louisiana Supreme Court, First Circuit Court of Appeals, and Twenty Second Judicial District Court, reversing the adverse judgments below in the interest of justice. Willard Hall, is an innocent man.

Executed on: _MAY 24_, 2019.

Respectfully submitted,

Willard Hall

WILLARD HALL, DOC# 595605
(Petitioner - Pro Se)
RAYBURN CORRECTIONAL CENTER
27268 HIGHWAY 21
ANGIE, LOUISIANA 70426

Counsel of Record

30

## VERIFICATION

STATE OF LOUISIANA

PARISH OF WASHINGTON

ANGIE, LOUISIANA

I, WILLARD HALL, DOC#595605, hereby declare under the penalty of perjury that the above and foregoing Application for Writ of Habeas Corpus is true and correct.

ANGIE, LOUISIANA, this ___24th___ day of ___MAY___, 2019.

_Willard Hall_ DOC#595605

WILLARD HALL - Affiant
Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that a full and complete copy of the above and foregoing Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 has been served on Warren L. Montgomery, District Attorney, in and for the 22ND Judicial District, Parish of Washington, Franklinton, Louisiana by depositing the same in the United States Mail, properly addressed, postage pre-paid, and first-class on this 24th day of MAY, 2019.

Willard Hall  - Afiant

WILLARD HALL, DOC# 595605
(Petitioner - Pro Se)
RAYBURN CORRECTIONAL CENTER
27268 HIGHWAY 21
ANGIE, LOUISIANA 70426
Counsel of Record

Served on :

Warren L. Montgomery
District Attorney
22ND Judicial District
Parish of St. Tammany
701 N. Columbia Street
Covington, Louisiana 70433