## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLARD HALL**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 19-10783**

**ROBERT C. TANNER, WARDEN**                        **SECTION "I"(4)**
**RAYBURN CORRECTIONAL CENTER**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual and Procedural Background

The petitioner, Willard Hall ("Hall"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On January 10, 2011, Hall was charged by Bill of Information in Washington Parish with two counts of attempted first degree murder of a police officer.[3]  He entered a plea of not guilty on February 14, 2011.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 7, Bill of Information, 1/10/11.

[4] St. Rec. Vol. 1 of 7, Minute Entry, 2/14/11.

The record reflects that, around midnight on November 12, 2010, Sergeant Randy Revere with the Washington Parish Sheriff's Office received a call from Hall's then-wife Deborah because Hall had locked her out of their house for the second night and refused to let her back inside.[5] Upon their arrival at the scene, Sergeant Roy Lee and Deputy Timothy Evans met with Mrs. Hall, and she asked them to assist her in getting inside the house. Deputy Evans slightly opened the outer storm door to knock on the wooden front door. He announced his presence and that he was with the Washington Parish Sheriff's Office. After the first or second knock, Hall called out, "I don't give a f*** who you are, get off my property."[6]

Hall then opened the wooden door but not the storm door, and was standing there naked holding a gun at his side. Deputy Evans told Hall at least twice to drop his weapon, and he did not comply. The officers collectively ordered Hall four or five times to drop his weapon and he did not comply. Sergeant Lee then told Hall that if he did not drop his weapon, he would be tasered. Hall, who appeared agitated and irate, cursed and told the officers to get off of his property.

Sergeant Lee thought Hall was preparing to shoot because he appeared jittery. With both doors open, Sergeant Lee deployed his taser. Hall, however, closed the wooden door which broke the leads to the taser. When the storm door closed, Deputy Evans heard a loud bang, saw the glass in the storm door shatter, and felt a burn in his right thigh. He discovered that a round came through his pants made a rash on his skin and nicked his magazine pouch. Approximately thirty-five seconds later, Sergeant Lee heard a second shot and realized the defendant shot again. Almost immediately after hearing the second shot, Sergeant Lee's middle finger on his right hand was

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. St. Rec. Vol. 3 of 7, 1st Cir. Opinion, 2012-KA-1812, pp. 2-4, 6/11/13.

[6]*Id*. at p.2.

grazed by a bullet and went completely numb.  Both officers retreated to their units to take cover and call for additional units.

In the meantime, Hall called 9-1-1 from inside the house and reported that the officers "shot" him with a taser.  He demanded that state troopers report to the scene.  Hall also spoke with Sergeant Revere over the phone, and Sergeant Revere convinced him to go outside without his firearm to talk to Sergeant Lee and Deputy Evans.  When Detective Glen McClendon reported to the scene to investigate, Hall was in the officers' custody.

Hall was tried before a jury on March 12 and 13, 2012, and found guilty of the lesser charges of aggravated battery of Deputy Evans and attempted manslaughter of Deputy Lee.[7]  On May 7, 2012, the Trial Court denied Hall's motions for a new trial and for post-verdict judgment of acquittal.[8]  After waiver of legal delays, the Court sentenced Hall to serve concurrent sentences of eight years on count one and fifteen years on count two.[9]  The Court also denied Hall's motion to reconsider the sentences.[10]

On direct appeal to the Louisiana First Circuit Court of Appeal, Hall's counsel asserted that the evidence was insufficient to support the verdicts and that the sentences were excessive.[11]  On June 11, 2013, the Louisiana First Circuit affirmed Hall's convictions and sentences finding the claims meritless.

---

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 3/12/12; Trial Minutes, 3/13/12; Jury Verdict, 3/13/12; St. Rec. Vol. 2 of 7, Trial Transcript, 3/12/12; Trial Transcript, 3/13/12; St. Rec. Vol. 3 of 7, Trial Transcript (continued), 3/13/12.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/7/12; Motion for New Trial, 4/9/12; Trial Court Order (#2), 5/7/12; Motion for Post-Verdict Judgment of Acquittal, 4/9/12; Trial Court Order (#3), 5/7/12; St. Rec. Vol. 3 of 7, Sentencing Transcript, 5/7/12.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/7/12; St. Rec. Vol. 3 of 7, Sentencing Transcript, 5/7/12.

[10]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/7/12; Motion to Reconsider Sentence, 5/7/12; Trial Court Order (#1), 5/7/12; St. Rec. Vol. 3 of 7, Sentencing Transcript, 5/7/12.

[11]St. Rec. Vol. 4 of 7, Appeal Brief, 2012-KA-1812, dated 12/11/12.

The Louisiana Supreme Court denied Hall's related writ application without stated reasons on February 7, 2014.[12]  Hall's convictions were final under federal law ninety (90) days later, on May 8, 2014, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On July 8, 2014, Hall's retained counsel filed an application for post-conviction relief with the state trial court which asserted two grounds for relief:[13] (1) Hall was denied effective assistance of counsel because counsel failed to consult with him, obtain his input, or use peremptory challenges to place men on the jury; and (2) the jury was comprised of eleven women in violation of the cross-section requirement and systematically excluded men.  On August 11, 2014, the state trial court advised Hall and his retained counsel that the application was deficient and would not be considered by the Court until corrected.[14]  Neither the attorney nor Hall responded to the letter.

More than two-years and seven-months later, on March 24, 2017, Hall's newly retained counsel filed a motion requesting the Court address the duplicate-copy of the deficient 2014 application for post-conviction attached to the motion.[15]  On May 12, 2017, the state trial court denied the motion and the application finding that the 2014 writ application was never corrected and the copy provided was still uncorrected and untimely.[16]

---

[12]*State v. Hall*, 131 So.3d 855 (La. 2014); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2013-K-1646, 2/7/14; La. S. Ct. Writ Application, 13-K-1646, 7/10/13.

[13]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief (and Supporting Memorandum), 7/8/14.

[14]St. Rec. Vol. 3 of 7, Letter to Yazbeck, 8/11/14; Letter to Hall, 8/11/14.

[15]St. Rec. Vol. 3 of 7, Letter from Vicknair (and attached pleadings), 3/27/17 (dated 3/24/17).

[16]St. Rec. Vol. 3 of 7, Trial Court Order, 5/12/17.

Despite the accuracy of that ruling, on October 16, 2017, the Louisiana First Circuit granted Hall's related *pro se* writ application with instructions for the state trial court to consider the new application for post-conviction relief attached to his writ application and which was construed by the circuit court as an attempt to correct the "timely filed 2014 application for post-conviction relief."[17]

Apparently unsure of how to execute the remand instructions, the state trial court reiterated Hall's failure to timely correct the 2014 application and despite this, reviewed the claims presented in the original 2014 application finding them to be meritless.[18]  The Court further noted that newly asserted issues in the "corrected" 2017 application were procedurally barred under La. Code Crim. P. art. 930.4 and untimely under La. Code Crim. P. art. 930.8.  Out of an abundance of caution, however, the state trial court also considered those claims which were delineated as follows:[19] (1) the state trial court exceeded its jurisdiction when it refused to hold a preliminary examination to determine probable cause for his arrest and the illegal search and seizure or hold an evidentiary hearing on the admissibility of the police report; (2) he received ineffective assistance of counsel when counsel's failure to challenge the search and seizure created a conflict of interest; and (3) appellate counsel was ineffective when he failed to assert on direct appeal that there was a jurisdictional defect, the Fourth Amendment violations, and the ineffective assistance of trial counsel.  After review, the state trial court found these claims conclusory and meritless, and also noted that Hall was not entitled under state law to a writ of habeas corpus.[20]

---

[17]*State v. Hall*, No. 2017KW1112, 2017 WL 4675788, at *1 (La. App. 1st Cir. Oct. 16, 2017); St. Rec. Vol. 5 of 7, 1st Cir. Order, 2017-KW-1112, 10/16/17; 1st Cir. Writ Application, 2017-KW-1112, 8/5/17 (dated 8/6/17).

[18]St. Rec. Vol. 3 of 7, Trial Court Order, 11/29/17.

[19]*Id.*; St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, dated 8/6/17.

[20]St. Rec. Vol. 3 of 7, Trial Court Order, 11/29/17.

The Louisiana First Circuit denied Hall's related writ application without stated reasons on April 9, 2018.[21]  On April 22, 2019, the Louisiana Supreme Court denied Hall's subsequent writ application holding that Hall failed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and as to the other claims, failed to satisfy his burden of proof under La. Code Crim. P. art. 930.2.[22]

## II.    Federal Petition

On May 29, 2019, the clerk of this Court filed Hall's federal petition for habeas corpus relief in which he asserts the following grounds for relief.[23] First, the state trial court exceeded its jurisdiction when it (a) refused to hold a preliminary examination to determine probable cause for his arrest and the illegal search and seizure or suppress the evidence including the police report because of the lack of probable cause, and (b) allowed a jury that was comprised of eleven women in violation of the cross-section requirement and systematically excluded men. Second, Hall alleges that he received ineffective assistance of counsel when counsel (a) failed to conduct a preliminary hearing on probable cause to arrest which would have provided evidence to put the state's case to an adversarial challenge at trial, (b) failed to conduct a hearing to suppress evidence, and (c) allowed an eleven-woman jury not representative of a cross-section of the community by systematically excluding men from the jury.

---

[21]*State v. Hall*, No. 2018KW0146, 2018 WL 1730174, at *1 (La. App. 1st Cir. Apr. 9, 2018); St. Rec. Vol. 6 of 7, 1st Cir. Order, 2018-KW-0146, 4/9/18; 1st Cir. Writ Application, 2017-KW-0146, 4/9/18 (dated 1/29/18); *see*, St. Rec. Vol. 3 of 7, Notice of Intent, 12/29/17 (dated 12/23/18); Trial Court Order, 1/4/18.

[22]*State v. Hall*, 267 So.3d 1106 (La. 2019); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 20185-KH-0796, 4/22/19; La. S. Ct. Writ Application, 18-KH-796, 5/16/18 (dated 5/3/18); St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 2018-KH-796, 5/16/18.

[23]Rec. Doc. Nos. 1, 1-1.

The State filed a response in opposition asserting that Hall's petition was not timely filed and reserving its right to assert defenses to the merits the claims, including procedural default and exhaustion.[24]  Hall filed a reply to the State's opposition asserting that his petition was timely filed because the delay was caused by his retained counsel's errors in failing to timely correct and proceed with his state court post-conviction applications.[25]

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to Hall's petition, which is deemed filed in this Court under the mailbox rule on May 24, 2019.[27]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[24]Rec. Doc. No. 10.

[25]Rec. Doc. No. 13.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court initially filed Hall's petition on May 29, 2019, when it was received, and the matter was opened on June 21, 2019, when the filing fee was paid after denial of pauper status.  Hall dated his signature on the form petition and memorandum on May 24, 2019.  This is the earliest date appearing in the record on which he could have handed his pleadings to prison officials for mailing to a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

The State asserts that Hall's federal petition was not timely filed under the AEDPA because his 2014 state application for post-conviction relief was deficient in form and not considered by the state court.  As a result, Hall had no pending state court application or other collateral review for well over one year after finality of the conviction.  However, the State has failed to consider the gravity of the rulings by the state courts in ultimately addressing that 2014 application.

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[28]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  As determined above and conceded by the State, Hall's conviction was final under federal law on May 8, 2014, which was 90 days after the Louisiana Supreme Court denied his post-appeal writ application.  Pursuant to § 2244, Hall had one year from that date, or until May 8, 2015, to timely file a federal application for habeas corpus relief which he did not do.  His petition would be untimely unless he is entitled to statutory or equitable tolling.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is

---

[28]The statute of limitations provision of the AEDPA under 28 U.S.C. § 2254(d) provides for other triggers which do not apply here:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In addition, the federal courts also have provided for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998).  Equitable tolling is warranted <u>only</u> when the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights.  *Pace*, 544 U.S. at 418-19.

The State asserts that Hall's federal petition was not timely filed because Hall's procedurally improper 2014 post-conviction application and the resubmitted copy in 2017 (which was procedurally improper and untimely) did not interrupt or toll the one-year AEDPA filing period.  As a result, the State argues, Hall had no properly filed state court application for post-conviction relief or other collateral review pending in any state court for more than three years between finality of his conviction on May 8, 2014, and at the earliest, May 6, 2017, when Hall submitted the "corrected" application to the Louisiana First Circuit.

The State, however, reaches this conclusion without deference to the Louisiana First Circuit's October 16, 2017, ruling as interpreted and applied by the state trial court's November 29, 2017, ruling.  Read together, it appears that the Louisiana First Circuit recognized that the 2014 application was timely and accepted the August 6, 2017 "correction" to relate back and repair any deficiencies in the original application left unaddressed by Hall's counsel.  In other words, the state courts appear to have considered Hall's 2014 application to have been pending in limbo the entire time from its filing by retained counsel to its correction by Hall in 2017.

The interest of comity and equity compel this Court to accept this determination, at a minimum, to equitable toll Hall's AEDPA filing period in light of the state courts' resurrection of the 2014 filing. The Court will consider Hall's federal petition to be timely filed, and the State's limitations defense must be rejected.

Although the State reserved its right to provide further briefing, the Court finds that the record is sufficient to proceed without additional briefing. The record reflects that Hall has exhausted state court review and that none of his claims are in procedural default. The Court will consider Hall's claims which were denied on the merits by the Louisiana Supreme Court.

## IV.    <u>Standards of a Merits Review</u>

The standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford*

*v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Denial of Pretrial Hearings and Jury Selection

Hall alleges that the state trial court exceeded its jurisdiction when it failed to conduct a preliminary examination to determine probable cause for his arrest and the resultant search and seizure. Hall also contends that the state trial court should have held a hearing to suppress the evidence and the police report based on the lack of probable cause for the arrest. Broadly construed, he also asserts that the state trial court erred when it allowed the jury to be comprised of eleven women and one man which resulted in the systematic exclusion of men in violation of his right to have a jury made up of a fair cross-section of the community.

Hall asserted these claims on post-conviction review in the state courts. The state trial court denied relief on the matters related to the probable cause determination and the search and seizure, finding that the claims were procedurally barred. Alternatively, the Court also held that Hall failed to establish that hearings were necessary to determine probable cause or that there was a lack of probable cause for his arrest or the search conducted after he shot at the police officers.

The state trial court also denied relief on the jury composition issue relying on United States Supreme Court precedent to find that Hall had no constitutionally protected right to a representative petit jury and that Hall failed to establish that either his counsel or the prosecutor had systematically excluded men from the jury.  While the Louisiana First Circuit summarily denied relief, the Louisiana Supreme Court held that Hall failed to meet his burden of proof under La. Code Crim. P. art. 930.2 on these claims.

A.    <u>**State Trial Court Error in General**</u>

Hall's arguments based on alleged error by the state trial court or abuse of its jurisdictional authority under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review.  *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)).  Federal habeas corpus review instead is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend

to state court conclusions of state law.").  Any alleged impropriety based on state law does not warrant federal habeas review or relief.

### B.    Fourth Amendment Claims

This federal court's review of Hall's Fourth Amendment claims is limited by the Supreme Court's long-standing prohibition in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) *Id*. at 494.  The "full and fair" hearing contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).  The *Stone* bar applies even in the face of alleged error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006).  The *Stone* bar applies "with equal force" when the state court's disposition of the Fourth Amendment claim is made on procedural grounds.  *Williams v. Brown*, 609 F.2d 216, 219-20 (5th Cir. 1980).

The United States Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."  *Caver*, 577 F.2d at 1192.  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use

of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*." *Williams*, 609 F.2d at 220.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition without regard for whether that opportunity is actually exercised by the petitioner or his attempts at relief were unsuccessful. *Janecka*, 301 F.3d at 320-21. This Court has repeatedly held that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (order adopting report and recommendation). Even when a state defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert a Fourth Amendment claim, the fact that the opportunity existed suffices for the *Stone* bar to apply to prevent federal habeas review. *Id*. at 320. The *Stone* rule applies to <u>all</u> claims arising under the Fourth Amendment including lawfulness of the arrest. *See*, *e.g.*, *Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (false arrest); *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994) (unlawful search and seizure). Therefore, absent proof by Hall that he was denied a full and fair review of his Fourth Amendment claims in state courts, which he was not, his request for federal habeas relief based upon Fourth Amendment violations is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.

Hall has not met his burden of overcoming the *Stone v. Powell* bar to this Court's review of his Fourth Amendment claims addressing the state trial court's consideration of probable cause for and the legality of his arrest and the search and seizure. The Court will not review these claims.

### C.    <u>Jury Composition</u>

Broadly construed, Hall asserts that the state trial court violated his constitutional right to a jury comprised of fair cross-section of the community when the court allowed his criminal trial

to proceed before eleven women and one man showing a systematic exclusion of men.  The Court first notes that the Supreme Court has repeatedly refused to extend the Sixth Amendment's fair cross-section requirement to the selection of a jury once that jury panel or venire has been constituted.  *See Holland v. Illinois*, 493 U.S. 474, 486-87 (1990) (holding the Sixth Amendment's fair cross-section requirement does not mirror the Equal Protection Clause's proscription against racial discrimination in the exercise of peremptory challenges); *Teague v. Lane*, 489 U.S. 288, 314-15 (1989) (recognizing that the denial of the right to a fair cross-section of the community in a jury venire does not undermine the fundamental fairness that must underlie a criminal conviction).  Nevertheless, because the claim was entertained by the state courts on post-conviction review, the Court will address the matter in accord with the AEDPA standards of review.

The question of whether a defendant was denied the right to a jury selected from a fair cross-section of the community is a mixed question of law and fact.  *United States v. Suggs*, 531 F. App'x 609, 618 (6th Cir. 2013).  This court must determine whether the state courts' denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law.

A party has a right to have a fair cross-section of the community on panels from which juries are chosen.  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  However, this does not mean that the Constitution guarantees a "jury of any particular composition."  *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009).  Instead, to present a prima facie of the denial of this right, a petitioner must prove that (1) the group alleged to be excluded is qualifies as "distinctive" group in the community (2) the representation of this group in venires is not fair and reasonable in relation to the numbers of such persons in the community, and (3) "systematic exclusion" in the jury-selection process accounts for the under-representation.  *Duren*, 439 U.S. at 364; *Berghuis v. Smith*, 559 U.S. 314, 327 (2010).  It is the burden of the petitioner to make this showing.  *United States*

*v. Aponte-Suarez*, 905 F.2d 483, 492 (1st Cir. 1990). The Fifth Circuit has held that a petitioner's failure to meet any one of the *Duren* elements defeats the fair cross-section claim. *United States v. Williams*, 264 F.3d 561, 568-69 (5th Cir. 2001).

Thus, as noted by the state trial court, the record does not support any basis for Hall's claim that men were systematically excluded from the jury venire by his counsel, by the State, or by any system in place in Washington Parish. Even if males may have been underrepresented on Hall's petit jury, he has not established that the underrepresentation was the result of a systematic exclusion as required by United States Supreme Court precedent to state a claim of denial of the right to representative jury pool.

Instead, Hall specifically complains about the makeup of the petit jury chosen in his case. *Duren* does not require that "juries actually chosen must mirror the community." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975); *Hearn v. Cockrell*, 73 F. App'x 79, 2003 WL 21756441, at *1, *6 (5th Cir. Jun. 23, 2003). "The fair-cross-section requirement . . . only guarantees that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups." *Paredes*, 574 F.3d at 289 (internal quotations and citations omitted). Hall, however, does not identify any procedure or selection criteria used in Washington Parish that operated to systematically exclude males from the venire from which that jury was selected.

Under *Duren*, Hall must establish that any underrepresentation of men is the general practice in Washington Parish. *See Timmel v. Phillips*, 799 F.2d 1083, 1083 (5th Cir. 1986). To meet his burden, Hall must demonstrate "that a large discrepancy occurred not just occasionally but in every weekly venire" over some significant period of time to establish systemic underrepresentation. *See Duren*, 439 U.S. at 366. Here, Hall did not present the state courts or

this federal habeas court with any statistics regarding the breakdown in population of genders or other demographics in Washington Parish. He made no showing of the selection process of a number of jury venires over a period of time.

In short, Hall presented no evidence, statistical or otherwise, demonstrating the degree of underrepresentation or systematic exclusion of men or other identifiable group or how Washington Parish's procedure constituted a system impermissibly susceptible to abuse and discrimination. He has presented no basis for any court to find that the jury venire was systematically manipulated to exclude men. As resolved by the state courts, his conclusory allegations were insufficient to meet his burden under *Duren* and its progeny.

The denial of relief on this issue was not contrary to or an unreasonable application of federal law. Hall is not entitled to relief on this claim.

## VI.   Effective Assistance of Counsel

Hall alleges that he was provided ineffective assistance when his trial counsel had a conflict of interest when he failed to request a preliminary hearing to determine probable cause for his arrest which could have provided evidence to put the state's case to an adversarial challenge at trial. He also claims that his counsel was conflicted when he failed to request a hearing to suppress evidence based on the unlawful search and seizure and allowed him to be tried by an eleven-woman jury that did not represent a fair cross-section of the community and systematically excluded men from the jury.

Hall asserted these arguments on post-conviction review in the state courts. The Louisiana Supreme Court ultimately denied relief based on Hall's failure to show entitlement to relief under the *Strickland* standards. In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient

performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See id*., 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness.") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas

> courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).  This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000).  Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789

(5th Cir. 2010).  The Court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

The Court first notes that Hall inappropriately uses the phrase "conflict of interest" in his efforts to allege prejudice resulting from his trial counsel's alleged deficient performance.  There is no doubt that Hall has a Sixth Amendment right to representation free from any conflict of interest.  *Morin v. Thaler*, 374 F. App'x 545, 551 (5th Cir. 2010).  The Supreme Court has held that prejudice is presumed when counsel is burdened with an actual conflict of interest.  *Cuyler v. Sullivan*, 466 U.S. 335, 350 (1980).  An actual conflict exists when counsel engages in "multiple representation" and "actively represented conflicting interests."  *Cuyler*, 466 U.S. at 349-50 (1980); *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995).  The Fifth Circuit has instructed that *Strickland* more appropriately gauges other alleged personal conflicts between counsel and the client.  *Beets*, 65 F.3d at 1260.  The appropriate measure of counsel's assistance in this case is *Strickland*, which was relied on by the state courts to address Hall's claims, and no prejudice is presumed.

### A.    <u>Probable Cause for Arrest</u>

Hall first claims that his counsel was ineffective for failing to assure that a probable cause hearing was held.  Generally, a probable cause determination should be made within a reasonable time following a warrantless arrest.  *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *see also Gerstein v. Pugh*, 420 U.S. 103 (1975).  "Under *Gerstein*, warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause." *McLaughlin*, 500 U.S. at 53; *Baker v. McCollan*, 443 U.S. 137, 143 (1979).  However, the failure timely to determine probable cause does negate the trial or conviction and cannot be used as grounds to challenge the conviction itself.  *See Gerstein*,

420 U.S. at 119 ("a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.")

Thus, even assuming that Hall's counsel should have requested a probable cause determination, that error alone would not have avoided trial or acted as a basis to challenge the conviction. Counsel's failure to request a probable cause hearing was not prejudicial under the *Strickland* standards.

Hall also suggests that, had his counsel required a probable cause hearing, counsel could have found other evidence to challenge the State's case at trial. Hall absolutely fails to indicate what if any evidence would have been discovered had counsel called for a probable cause hearing. When such an allegation is made, the habeas petitioner "must allege with specificity" what could have been discovered had counsel done more investigation "and how it would have altered the outcome of the trial." *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011) (quotation omitted) (emphasis added); *accord Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). Hall has not met this burden.

Instead, amidst his ineffective assistance argument, Hall dives into a discussion of the sufficiency of the evidence presented at trial under *Jackson v. Virginia*, 443 U.S. 307 (1979). He has not specifically raised that claim in this Court but it was asserted on state court direct appeal. The Court has thoroughly reviewed Hall's arguments in light of his ineffective assistance of counsel claims and has found no indication of any evidence that could have been obtained by counsel at a probable cause hearing that was not presented by the State (or defense) at trial.

Furthermore, the Court notes that the Louisiana First Circuit properly applied *Jackson*, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements

of the crime proven beyond a reasonable doubt.[29]  *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  The Court also recognized that it could not review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

The Court indicated that aggravated battery was defined by La. Rev. Stat. Ann. § 14:34 as "a battery committed with a dangerous weapon."  Attempted manslaughter was defined as any action taken towards a manslaughter, which is "a homicide . . . committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  La. Rev. Stat. Ann. § 14:31(A)(1).  The Court then reviewed the trial testimony which included Hall's testimony that he did not point the gun at the officers and that the gun only went off when he fell to the floor after being tasered.

However, Mrs. Hall and the officers each testified that Hall slammed the door on the taser leads which broke and fell to the ground.  In addition, their testimony indicated that Hall was angry and noncompliant and, after the door closed and knowing the officers were standing there, Hall fired one shot through the door and then 35 seconds later, fired a second shot through the door.  One shot grazed one officer and the other shot hit the other officer in the hand.  As the state court

---

[29]Claims of insufficient evidence under *Jackson* present a mixed question of law and fact.  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  A federal habeas court gives deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of, Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

concluded, this evidence was sufficient to support the jury's verdicts. Hall has not established that the state courts' denial of his insufficient evidence claim was contrary to or an unreasonable application of *Jackson*.

Hall also has not established through this lengthy detour how his counsel's performance was deficient or altered the outcome of the trial. In other words, he has failed to establish ineffective assistance of counsel based on his counsel's failure to seek a probable cause hearing. The denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.

### B. <u>Move to Suppress</u>

Hall next claims that his counsel should have moved to suppress the evidence seized as a result of an allegedly unlawful search. As noted by the state trial court, Hall fails to indicate to what evidence he refers. Nevertheless, in addressing his claims, the state trial court resolved that the trial evidence proved the officers did not conduct any searches or seizures until after Hall fired shots at them and he was placed under arrest. In making these findings, the state trial court resolved that any search and seizure incident to the arrest was lawful and no motion to suppress was warranted. As such, the court held "counsel was not ineffective in failing to raise the issue."[30]

The record supports the underlying factual findings made by the state court. The officers did not enter Hall's home, search his property, or seize anything until after he was arrested for shooting at both officers. It is well settled that counsel is not required by the Sixth Amendment to file meritless motions. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.");

---

[30]St. Rec. Vol. 3 of 7, Trial Court Order, 11/29/17.

*Williams v. Cain*, Nos. 06-0224 c/w 06-0334, 2009 WL 1269282, at *12 (E.D. La. May 7, 2009) ("Counsel is not considered ineffective for failing to assert a baseless and frivolous motion.").  For this reason, counsel's failure to file a motion that ultimately would be denied "cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."  *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress on a meritless ground was not deficient performance); *Johnson*, 306 F.3d at 255; *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990).  For these reasons, Hall has failed to establish that the denial of relief on this claim was contrary to or an unreasonable application of *Strickland*.

 C. <u>**Jury Composition**</u>

 Finally, Hall alleges that his counsel was ineffective for selecting and allowing him to go to trial before a jury that was made up of eleven women and one man, which was not a fair cross-section of the community and systematically excluded men.

 To the extent Hall suggests that counsel improvidently used peremptory challenges, he has done so only superficially and has otherwise failed to establish that counsel acted unreasonably in excluding any particular juror.  Under *Strickland* and its progeny, "[t]he attorney's actions during voir dire are considered to be a matter of trial strategy."  *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995).  This general rule applies to an attorney's decision whether to exercise a peremptory strike.  *See, e.g.*, *Ray v. Johnson*, No. 98-10659, 1999 WL 800173, at *1 (5th Cir. Sept. 20, 1999); *Tolliver v. United States*, No. 07cv525, 2009 WL 1393300, at *6 (S.D. Ill. May 15, 2009) ("[T]he decision of when to use a peremptory strike lies firmly within the realm of 'strategic choices' that the Court will not second guess on collateral review.")  Hall's conclusory claims do not

demonstrate that counsel's decisions during voir dire were other than reasonable and sound trial strategy.

Furthermore, the Supreme Court precedent has "never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries . . . " *Lockhart v. McCree*, 476 U.S. 162, 173 (1986). Hall cannot conflate his fair cross-section claim with a challenge to his counsel's use of peremptory challenges during voir dire.

In addition, the state courts and this federal court have concluded that Hall has not made a prima facie showing of a fair cross-section claim under *Duren* and its progeny. For this additional reason, Hall has not shown that counsel erred in seating the petit jury or that there were grounds for counsel to have challenged to composition of the jury itself. Hall had no right to a representative petit jury. Under the doubly deferential standard invoked by *Strickland* on habeas review, Hall has failed to establish that his counsel was deficient or caused prejudice to the proceeding.

Hall has not shown that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

## VII.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Hall's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[31]

New Orleans, Louisiana, this 27th day of November, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[31]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.